# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRINA EVERETT,<br><br>       Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE, Commissioner<br>of Social Security,<br><br>       Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

1:10-cv-1831 LJO-BAM

**FINDINGS AND RECOMMENDATIONS
REGARDING PLAINTIFF'S SOCIAL
SECURITY COMPLAINT**

## BACKGROUND

Plaintiff Trina Everett ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income benefits pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe, for findings and recommendations to the District Court.

## FACTS AND PRIOR PROCEEDINGS

On May 17, 2007, Plaintiff filed her first applications for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI, respectively, of the Social Security

Act (the Act), alleging disability beginning March 31, 2004. AR 9.[1]  Plaintiff's applications were denied initially and on reconsideration. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 55, 62.  ALJ Sandra K.  Rogers held a hearing and issued an order denying benefits on December 21, 2009, finding Plaintiff was not disabled. AR 9-19. This appeal followed.

**Relevant Medical Record**

The record is summarized here in chronological order with particular regard to the reports relating to Plaintiff's alleged mental impairments.  Nonetheless, the record as a whole was reviewed and will be specifically referenced as necessary to this Court's decision.  AR 192-364.

Plaintiff alleged she became unable to work in March 2004, when she was 31 years old, due to depression, panic attacks, and migraines.  AR 136, 131.

In April 2003, Plaintiff began seeking mental health treatment at the Larmier Center for Mental Health with social worker Charles Miller, Licensed Clinical Social Worker ("LCSW"). AR 193, 192-226.  Miller noted that Plaintiff did not meet the criteria for mood disorder and scheduled her for a medication evaluation and a therapy session.  During this time, in January 2004, Plaintiff stated that she had an anxiety attack after a conflict with her daughter, and her doctor prescribed the medication Xanax. AR 221.  A few months later, in June 2004, Plaintiff showed progress saying she was "getting along well [with her] daughter" and was going on vacation in California.  AR 216. At that time, Plaintiff asked for more Xanax, and her doctor refused. AR 216. In August 2004, Plaintiff was administratively discharged from Mr. Miller's care due to "frequently fail[ing] to appear or cancel[ing] late" for appointments. AR 193.

No medical records reflect that Plaintiff received treatment between late 2004 and mid-2007.

In September 2007, Plaintiff sought treatment from primary care physician Karin Forno, M.D., complaining of pain in her left hand and back. AR 281. Dr. Forno prescribed pain medication and diagnostic tests.  AR 281.  X-rays of Plaintiff's spine showed normal alignment, without evidence of old or recent trauma, normal osseous structures, no disc narrowing or degenerative

---

[1]     References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

changes, intact posterior elements, and normal apophyseal joints. AR 275. A few months later, test results suggested Plaintiff had moderate carpal tunnel syndrome in her left hand, with no evidence of cubital tunnel syndrome or radial nerve neuropathy. AR 273. In September 2007, Plaintiff also sought treatment from psychiatrist Stefan Lampe, M.D. AR 234-36. Plaintiff told Dr. Lampe that she had a history of methamphetamine use and alcoholism, but had not used methamphetamines for eleven years and had been sober for one year. AR 234. With respect to daily activities, Plaintiff reported to Dr. Lampe that she sleeps for half the day and watches television the rest of the time. AR 235. Upon examination, Plaintiff had normal psychomotor functioning, normal speech, depressed mood with slightly irritable affect, no evidence of psychosis, and poor insight and judgment. AR 235. After examination, Dr. Lampe observed that there were "severe inconsistencies" in Plaintiff's description of her symptoms. AR 235. He also noted that she was following a "very unorthodox regimen which in fact has a great potential to worsen her cycling." AR 236. Dr. Lampe found, in relevant part, that Plaintiff could understand, remember, and carry out simple instructions and "probably" would have difficulty dealing with the public. AR 236.

In October 2007, a drug screening ordered by Plaintiff's doctor was positive for opiates and benzodiazepines. AR 271.

In December 2007, examining psychologist Junko McWilliams, Ph.D., reviewed the medical evidence and rendered an opinion. AR 237-54. Dr. McWilliams opined that Plaintiff was mentally able to perform "simple, repetitive and unskilled tasks in a socially less demanding setting." AR 253. Dr. McWilliams also found that Plaintiff suffered from moderate limitations in her ability to: understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in the work setting. Dr. McWilliams did not find Plaintiff to markedly limited in any category.

On December 31, 2007, Plaintiff was detained at the Doctors Behavioral Health Center on

a psychiatric hold after stating that she tried to swallow a bottle of Seroquel 300 mg pills, but said that she was stopped by her mother after taking two. AR 284. Plaintiff reported that she becomes depressed during the holiday season, after losing her children to CPS thirteen years ago due to her drug use. AR 284. Plaintiff's treating physician diagnosed her with nonspecific depression. AR 285.

In January 2008, social worker David Sandoval recommended that Plaintiff attend "AA/NA" [Alcoholics Anonymous/Narcotics Anonymous], but Plaintiff refused. AR 279.

In June 2008, physician Miguel Hernandez, M.D., conducted an internal medicine evaluation in connection with Plaintiff's claim for benefits. AR 286-90. After examination, Dr. Hernandez opined that Plaintiff could sit, stand, and walk for 6 hours in an 8-hour day; could lift and carry 10 pounds occasionally or frequently; had no postural limitations; had no environmental limitations; but was limited in reaching, handling, feeling, grasping, or fingering, especially in a repetitive manner, with the left hand. AR 289-90.

Also, in June 2008, psychologist James Scaramozzino, Ph.D., conducted a comprehensive psychological evaluation of Plaintiff. AR 291-96. Among other statements, Plaintiff stated that even when psychotherapy is available, she does not frequently participate. AR 292. Plaintiff also said that she has had difficulty finding a job "primarily because she has a history of not working, writing bad checks, and she has a 'high risk for fraud' statement on her employment record." AR 292. Upon examination, Plaintiff had good hygiene, made good eye contact, had sad facial expressions, was cooperative, and had a hopeful attitude. AR 293. Her stream of mental activity was normal, and her speech was logical, coherent and concise. AR 293. Plaintiff's thought content was appropriate. AR 293. Her mood was mildly depressed. AR 293. Plaintiff's intellectual functioning appeared to be within the average range. AR 294. Her recent and long-term memory was intact. AR 294. She had difficulty with mathematics. AR 294. Plaintiff's concentration ability was within normal limits. AR 294. She was able to perform a simple three-step command successfully. AR 294. Plaintiff's concentration for conversation was adequate. AR 294. Her abstract thinking was within normal limits. AR 294. Her judgment and insight was considered to be marginal. AR 294.

After examination, Dr. Scaramozzino opined, in part, that Plaintiff could understand and

remember very short and simple instructions; could sustain an ordinary routine without special supervision; and was capable of managing her own funds. AR 295-96. Dr. Scaramozzino found that Plaintiff was "moderately impaired" in understanding and remembering detailed instructions; maintaining concentration and attention; accepting instructions from a supervisor and responding appropriately; completing a normal workday/workweek without interruptions at a constant pace; interacting with coworkers; dealing with changes in the work setting; and social functioning.  AR 296.

Later in June 2008, psychiatrist Archi R. Garcia, M.D., reviewed the mental health evidence and opined that Plaintiff could perform "simple repetitive tasks."  AR 298.

In September 2008, Plaintiff had a screening appointment at Stanislaus County Behavioral Health and Recovery Services.  AR 315-19.  The following month, Plaintiff visited psychiatrist Beatrice Picknell, M.D. AR 313-14.  After recording Plaintiff's complaints, Dr. Picknell stated that Plaintiff was "difficult to evaluate," as she was a poor historian and gave conflicting information; Dr. Picknell concluded that there was limited reliable information available.  AR 314.

In July 2009, Plaintiff visited the emergency room complaining of fever and chills, productive cough, and left-side chest pain.  AR 353.  Plaintiff told the attending physician that she smokes a pack of cigarettes per day.  AR 353.  X-rays showed a small amount of fluid in the left lung. AR 355. The attending physician prescribed antibiotics and an inhaler, and encouraged Plaintiff to quit smoking.  AR 354.

In July 2009, primary care physician Dr. Forno filled out a questionnaire for Plaintiff, in which she stated that Plaintiff was "disabled" due to psychiatric diagnosis, and physically she could perform sedentary work. AR 322-23. In August 2009, after consulting with another physician, Dr. Forno stopped prescribing Plaintiff Valium and said she was "reassessing" Plaintiff's medications. AR 324.  Upon hearing this, Plaintiff became angry and Dr. Forno asked social worker Darlene Thompson to intervene.  AR 324.  That same month, Dr. Forno referred Plaintiff for a drug screening, and Plaintiff again tested positive for benzodiazapines.  AR 333.

**2009 Hearing Testimony**

ALJ Rogers  held a hearing on August 26, 2009, in Stockton, California.  Plaintiff appeared

1  and testified. She was represented by attorney Jeffrey Milam. Vocational Expert ("VE") George A.
2  Meyers also testified. AR 9.

3       Plaintiff's testimony indicated that she was born on May 31, 1972 and was thirty-seven years
4  old at the time of the hearing. Plaintiff testified that she is separated from her husband and lives with
5  her mother and step-father. AR 27. Plaintiff has three children that were removed from her home
6  thirteen years ago by child protective services. Plaintiff dropped out of high school in the 7th grade,
7  she has no GED and no vocational training. AR 30. Plaintiff testified that her last job was over four
8  years ago, where she worked as a receptionist at a mortgage company before being fired for poor
9  attendance. AR 30. Plaintiff also testified that she has been fired from three to four jobs, and feels
10  she cannot work because of her inability to get along with others. AR 32.

11      Asked to describe a typical day, Plaintiff said that she usually stayed in her room all day
12  watching TV, with the windows covered, and that her mother would have to come in and make her
13  get up to do her chores. AR 33. Plaintiff stated that she "just . . . [didn't] want to do them" and that
14  she had no ambition to do anything. AR 33. In order to feel better, sometimes Plaintiff goes to the
15  store with her mother, but if the store is crowded she will have a panic attack. AR 34. Plaintiff also
16  testified that she has trouble concentrating and can generally concentrate for and average of 45
17  minutes at a time.

18      As for physical functional limitations, Plaintiff said that she suffers from arthritis in her back.
19  With the medications, Percocet and Neurontin, she has nine to twelve hours per day with no pain at
20  all. AR 35-36. Plaintiff also said she had carpal tunnel syndrome in her left hand. AR 38. She
21  experiences tingling and numbness in her left hand approximately three hours a day. Plaintiff is
22  right-handed. AR 38.

23      Thereafter, the ALJ elicited the testimony of Vocational Expert ("VE") George Meyers. AR
24  46-53. VE Meyers indicated that Plaintiff performed past relevant work as a cashier, delivery driver,
25  housekeeper, and receptionist. AR 41.  VE Meyers opined that Plaintiff could physically perform
26  her past relevant work as a receptionist but could not socially perform her past relevant work.  AR
27  41-42.

28      The VE was asked to consider several hypothetical questions posed by the ALJ.  First, VE

6

Meyers was asked to assume a hypothetical worker of Plaintiff's age, education, and work experience, that person could lift ten pounds frequently, ten pounds occasionally; stand or sit six hours in an eight hour day; could frequently handle and finger with the left hand, but should avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation.  AR 41.  VE Meyers indicated such an individual could perform Plaintiff's past relevant work as a receptionist.  AR 41.

In a second hypothetical, VE Meyers was asked to consider the same worker, with the following abilities and/or limitations: can understand and remember very short and simple instructions is not significantly impaired; the ability to understand, remember detailed instructions is moderately impaired; ability to maintain concentration and attention is moderately impaired; ability to accept instructions from a supervisor and respond appropriately moderately impaired; ability to stand an ordinary routine without special instructions or supervision is not significantly impaired; ability to complete a normal workday or work week without interruption at a constant pace is moderately impaired; ability to interact with co-workers is moderately impaired.  VE Meyers testified that this hypothetical worker could not perform Plaintiff's past work or any work as it exists in the national economy.  AR 42.

In a third hypothetical, the VE was asked to assume a hypothetical worker of Plaintiff's age, education, and work history, and can perform simple, repetitive, unskilled tasks, in a socially less demanding environment, where there is no dealing with the public and only minimal interaction with co-workers and supervisors.  VE Meyers testified that this hypothetical worker could not perform Plaintiff's past work, but the individual could perform work at the sedentary, unskilled level, as it exists in the national economy.  AR 42.

**ALJ's Findings**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 9-19. More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 31, 2004.  AR 11. Further, the ALJ identified carpal tunnel syndrome, asthma, depression, a personality disorder, and a history of drug use as severe impairments.  AR 11.  Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments did not meet or exceed any of the listed impairments.  AR 11.

1   Based on her review of the entire record, the ALJ determined that Plaintiff has the residual

2   functional capacity ("RFC") to lift and carry up to ten pounds occasionally/frequently, can walk

3   and/or stand for six hours, as well as sit for six hours, in an eight-hour workday, with unlimited

4   pushing/pulling other than shown for lifting/carrying, frequent postural activities (climbing,

5   balancing, stooping, kneeling, crouching, and crawling), no more than frequent handling and

6   fingering with the left hand, and Plaintiff should avoid concentrated exposure to fumes, odors, dusts,

7   gases, and poor ventilation.  AR 14.  From a mental standpoint, the ALJ found Plaintiff has

8   moderate limitations in her ability to: understand, remember, and carry out detailed instructions;

9   maintain attention and concentration for extended periods; complete a normal workday/work week

10  without interruptions from a psychologically based symptoms and/or perform consistent pace

11  without an unreasonable number and length of rest periods; interact appropriately with the general

12  public, accept instructions and respond appropriately with the general public, accept instructions and

13  respond appropriately to criticism from supervisors, and get along with co-workers or peers without

14  distracting them or exhibiting behavioral extremes; and moderate limitations in her ability to respond

15  appropriately to changes in a work setting.  According to the ALJ, with these limitations, Plaintiff

16  would be capable of performing a restricted range of simple, repetitive, sedentary, unskilled work

17  in a socially less demanding setting.  AR 14.

18                                              **SCOPE OF REVIEW**

19      Congress has provided a limited scope of judicial review of the Commissioner's decision to

20  deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this

21  Court must determine whether the decision of the Commissioner is supported by substantial

22  evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla,"

23  *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

24  *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable

25  mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record

26  as a whole must be considered, weighing both the evidence that supports and the evidence that

27  detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).

28  In weighing the evidence and making findings, the Commissioner must apply the proper legal

1  standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold

2  the Commissioner's determination that the claimant is not disabled if the Secretary applied the

3  proper legal standards, and if the Commissioner's findings are supported by substantial evidence.

4  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

5  ## REVIEW

6        In order to qualify for benefits, a claimant must establish that he or she is unable to engage

7  in substantial gainful activity due to a medically determinable physical or mental impairment which

8  has lasted or can be expected to last for a continuous period of not less than twelve months.  42

9  U.S.C. § 1382c (a)(3)(A).  A claimant must show that he or she has a physical or mental impairment

10  of such severity that they are not only unable to do their previous work, but cannot, considering age,

11  education, and work experience, engage in any other kind of substantial gainful work which exists

12  in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The

13  burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir.

14  1990).

15        Here, Plaintiff argues that the ALJ erred in: (1) posing an incomplete hypothetical question

16  to the VE; (2) rejecting her treating physician's opinion without a legitimate basis for doing so; (3)

17  failing to properly weigh the medical evidence; and (4) failing to credit her testimony and third party

18  statements about the nature and extent of her limitations.

19  ## DISCUSSION

20  ### *1.    The ALJ Propounded a Complete Hypothetical.*

21        Plaintiff contends that the ALJ's step five finding was not supported by substantial evidence.

22  She argues that the ALJ's hypothetical question to the VE required a finding that she could not work.

23  More specifically, Plaintiff argues that the ALJ's RFC finding shows that she has moderate

24  limitations in:

25        understanding, remembering, and carrying out detailed instructions; maintaining
       attention and concentration for extended periods; the "ability to complete a normal
26       workday/work week without interruptions from psychologically based symptoms
       and/or to perform at a consistent pace without an unreasonable number of length and
27       rest periods; moderate limitation in her ability to interact appropriately with the
       general public, accept instructions and respond appropriately to criticism from
28       supervisors, and get along with co-workers or peers without distracting them or

exhibiting behavioral extremes; and moderate limitations in her ability to respond appropriately to changes in a work setting.

In Plaintiff's view, the ALJ erred by relying on the VE's testimony that did not "accommodate all of these limitations." (Doc. 22 at 8). The Commissioner replies that the ALJ's step five finding was supported by substantial evidence and is thus proper. (Doc. 19 at 11).

At step five of the sequential analysis, the RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, for five days a week, or equivalent work schedule. SSR 96-8p. The RFC assessment considers only functional limitations and restrictions which result from an individual's medically determinable impairment or combination of impairments. SSR 96-8p. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Social Security Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

"Hypothetical questions posed to the vocational expert must set out all the limitations and restrictions of the particular claimant . . .." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). The testimony of a VE "is valuable only to the extent that it is supported by medical evidence." *Sample v. Schweiker*, 694 F.2d 639, 644 (9th Cir. 1982). The VE's opinion about a claimant's RFC has no evidentiary value if the assumptions in the hypothetical are not supported by the record. *Embrey v. Bowen*, 849 F.2d at 422. However, an ALJ is only required to present the VE with those limitations he finds to be credible and supported by the evidence. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001).

Here the ALJ assessed Plaintiff's mental RFC as follows:

From a mental standpoint, I find that claimant has moderate limitations in her ability to understand, remember, and carry out detailed instructions; moderate limitations in her ability to maintain attention and concentration for extended periods; moderate limitations in her ability to complete a normal workday/work week without interruptions from a psychologically based symptoms and/or perform consistent pace without an unreasonable number and length of rest periods; moderate limitation in her ability to interact appropriately with the general public, accept instructions and respond appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and moderate limitations

10

in her ability to respond appropriately to changes in a work setting.  Based on the foregoing, the claimant would be capable of performing a restricted range of simple, repetitive, sedentary, unskilled work in a socially less demanding setting.

AR 14.

At the hearing, the ALJ posed two relevant hypothetical questions to the VE to solicit testimony regarding what jobs Plaintiff could perform given her mental impairment limitations. In the first hypothetical, the ALJ asked:

> [Q1]:   And if we were to add that as set forth in Exhibit 10 page 5 that the person is capable–or the claimant's ability to understand and remember very short and simple instructions is not significantly impaired.  The ability to understand, remember detailed instructions is moderately impaired.  Ability to maintain concentration and attention is moderately impaired.  Ability to accept instructions from a supervisor and response [sic] appropriately is moderately impaired.  Ability to stand an ordinary routine without special instructions or supervision is not significantly impaired.  Ability to complete a normal work day or work week without interruptions at a constant pace is moderately impaired.   Ability to interact with co-workers is moderately impaired.  Would such a person be able to perform that past relevant work that you just described?

> [A]:    No, Your Honor.

> [Q:]   Would there be other jobs existing in the national or regional economies such a person could perform?

> [A:]   No, Your Honor.

In the second hypothetical, the ALJ asked:

> [Q2]:   Let me just see if there was one more.  All right.  If we again assume a person the same age, education, and work experience as the claimant, but we now assume as is set forth in Exhibit 5f, that the person could perform simple, repetitive, unskilled tasks, in what they refer to as a socially less demanding setting which let's define as one which there is no dealing with the public and only minimal interaction with co-workers and supervisors.  Would such a person then be able to perform the past relevant work?

> [A]:    No, Your Honor.

> [Q]:   And would there be other jobs existing in the national or regional economies such a person could perform?

> [A]:    Yes, Your Honor... [e]xamples would be addresser, DOT number 209.587-010, sedentary, unskilled, SVP: 2, 12,000 jobs.  Lens inserter, 713.687-026, sedentary, unskilled, SVP 2, 4,000.  And grinding machine operator, 690.685-190, sedentary, unskilled, SVP: 2, 1,200 jobs.

AR 42.

Contrary to Plaintiff's assertion, the second hypothetical question posed to the VE—and relied on by the ALJ—is a precise reflection of the ALJ's RFC assessment and the assessment by

11

examining psychologist Dr. McWilliams.   Exhibit 5f, referenced in the ALJ's second hypothetical

question, is the mental RFC assessment from Dr. McWilliams.  In that assessment, Dr. McWilliams'

concluded that Plaintiff has moderate limitations in her ability to:  understand, remember, and carry

out detailed instructions; maintain attention and concentration for extended periods; complete a

normal workday/work week without interruptions from a psychologically based symptoms and/or

perform consistent pace without an unreasonable number and length of rest periods; interact

appropriately with the general public, accept instructions and respond appropriately with the general

public, accept instructions and respond appropriately to criticism from supervisors, and get along

with co-workers or peers without distracting them or exhibiting behavioral extremes; and respond

appropriately to changes in a work setting.  Dr. McWilliams then concluded that considering these

moderate limitations, Plaintiff would be capable of performing a restricted range of simple,

repetitive, sedentary, unskilled work in a socially less demanding setting. AR 64.   The ALJ adopted

Dr. McWilliams' assessment of Plaintiff's limitations in determining her RFC. The ALJ then posed

this identical RFC assessment to the VE in her second hypothetical.

Plaintiff's argument that the second hypothetical proposed to the VE includes less restrictions

than the ALJ's final RFC assessment is based on a misreading of the administrative record.  In her

second hypothetical to the VE, the ALJ added additional limitations so as to account for Plaintiff's

moderate limitations.  By referencing Exhibit 5f, which included all of the moderate limitations

assessed in the ALJ's RFC assessment, the ALJ went on to add the additional limitation that Plaintiff

would only be capable of performing "simple, repetitive, sedentary, unskilled work in a socially less

demanding setting."  By limiting Plaintiff to simple, repetitive, unskilled tasks, in a socially less

demanding setting, the ALJ propounded a complete hypothetical that accurately reflected her RFC

assessment.

Although Plaintiff argues the ALJ did not list out every limitation in her second hypothetical

question, that does not amount to error.  In the second hypothetical, the ALJ referenced Exhibit 5f

which included Plaintiff's moderate limitations.  The ALJ's hypothetical then acknowledged that

Plaintiff would need additional limitations including simple unskilled tasks in a socially less

demanding environment.  Further, the ALJ was not required to pose a hypothetical that listed each

and every limitation that Plaintiff argues is supported by the record, as the ALJ had already taken evidence regarding Plaintiff's limitations into account in formulating Plaintiff's RFC. Therefore, the ALJ committed no legal error when she questioned the vocational expert. *See Howard v. Astrue*, 2012 U.S. Dist. LEXIS 33677, *33 (N.D. Cal. Mar. 13, 2012) (ALJ did not err in questioning VE when the ALJ took Plaintiff's limitations into account when formulating Plaintiff's RFC). Therefore, the ALJ committed no legal error when she questioned the vocational expert.

### 2.    *Evaluation of the Medical Evidence*

Plaintiff contends the ALJ erred by failing to provide specific and legitimate reasons for rejecting the opinion of treating physician Dr. Karin Forno.  Plaintiff also complains the ALJ improperly rejected the opinions of Drs. Scaramozzino, Lampe and Hernandez.  (Doc. 22 at 11).

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians).  As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987).  At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).  Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984).  As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v.*

13

1  *Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

2  The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence

3  that justifies the rejection of the opinion of either an examining physician or a treating physician.

4  *Pitzer v. Sullivan*, 908 F.2d at 506 n. 4; *Gallant v. Heckler*, 753 F.2d at 1456.  In some cases,

5  however, the ALJ can reject the opinion of a treating or examining physician, based in part on the

6  testimony of a nonexamining medical advisor.  *E.g., Magallanes v. Bowen,* 881 F.2d at 751-55;

7  *Andrews v. Shalala*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995).  For example,

8  in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the

9  ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of

10  Magallanes's treating physicians . . .."  *Magallanes*, 881 F.2d at 752.  Rather, in *Magallanes*, there

11  was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory

12  test results, on contrary reports from examining physicians, and on testimony from the claimant that

13  conflicted with her treating physician's opinion.  *Id*. at 751-52.

14  **Dr. Forno**

15  With regard to Plaintiff's treating physician, ALJ Rogers found:

16  Dr. Karm [sic] Forno, M.D., claimant's primary medical doctor, assessed that the
claimant is physically capable of doing sedentary work, and that she is "disabled" due

17  to psychiatric impairments rather than physical impairments. More specifically, Dr.
Forno assessed that the claimant would be capable of lifting/carrying up to 20 pounds

18  occasionally and 10 pounds frequently with standing/walking up to 2 hours in an 8-
hour workday and sitting for up to 6 hours in an 8-hour workday, and that claimant

19  would have 100 percent ability to use her hands [citing to AR 322-23].

20  An opinion as to whether a claimant is "disabled" under Social Security law is an
opinion reserved to the Social Security Administration, and Dr. Forno's opinion

21  concerning claimant's alleged "disability" based upon mental impairments is
therefore entitled to no weight.  Moreover, Dr. Forno is a general medical doctor

22  who, for the most part, has prescribed medications for claimant's mental impairments
based upon therapy sessions and recommendations made by a licensed clinical social

23  worker (David Sandoval, LCSW).

24  AR 16.

25  Despite Plaintiff's assertions to the contrary, the ALJ offered numerous specific and

26  legitimate reasons to disregard Dr. Forno's mental impairment opinion.  First, the ALJ rejected Dr.

27  Forno's conclusion of Plaintiff's disability as being an "opinion reserved" to the Commissioner.  AR

28  16.  Defendant correctly asserts that it is the Commissioner who is responsible for making the

determination of whether a claimant meets the statutory definition of a disability.  20 C.F.R. § 104.1527(e)(l); SSR96-5p, 1996 SSR LEXIS 2.  Opinions on issues reserved for the Commissioner are not considered medical opinions. 20 C.F.R. § 404.1527(e).  "[E]ven when offered by a treating source, [opinions on whether an individual is disabled] can never be entitled to controlling weight or given special significance."  SSR 96-523, 1996 SSR LEXlS 2.

Second, the ALJ observed that Dr. Forno was a "general medical doctor," as opposed to a specialist or mental health physician such as a psychiatrist. AR 16. This is a proper consideration which reduces the weight of the opinion. *See Holohan v. Massanari*, 246 F.3d 1195, 1202-03, n. 2 (9th Cir. 2001) (a treating physician's opinion on some matters may be entitled to little if any weight where physician offers an opinion on a matter not related to his area of specialization) (citing 20 C.F.R. § 404.1527(d)(5)).

Third, the ALJ explained that Dr. Forno simply prescribed medications for Plaintiff based on a social worker's notes and recommendations.  AR 16. The ALJ logically considered that Dr. Forno's impressions of Plaintiff's mental health was filtered through the social worker's reports, and social workers are not an "acceptable medical source" for purposes of a Social Security claim. *See Macros v. Chafer*, 93 F.3d 540, 544 (9th Cir. 1996) (ALJ is permitted to make inferences "logically flowing from the evidence"); 20 C.F.R. § 404.1513(a), 416.913(a) (evidence from "accepted medical sources" is required to establish claimant has medically determinable impairment).  Only licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists are "acceptable medical sources" under the regulations. *See* 20 C.F.R. § 416.913(a).  David Sandoval, a qualified social worker is not an "acceptable medical source" whose opinion is entitled to controlling weight. SSR 06-03p (social worker is an "other source" under 20 C.F.R.§§ 404.1513(d), 416.913(d)).

The ALJ's decision to give Dr. Forno's opinion of Plaintiff's mental impairments less weight than the opinion of other mental health specialists is not error. At this procedural posture, the Court need only determine whether the ALJ supported this decision by specific, legitimate reasons grounded in substantial evidence.  As described above, the ALJ gave various specific, legitimate reasons for discounting Dr. Forno's opinion, and those reasons are supported by the record. *See*

1   *Lester v. Cater,* 81 F.3d 821, 830 (9th Cir. 1996); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th

2   Cir. 2008).  Accordingly, the ALJ did not err in evaluating Dr. Forno's opinion.

3      ***Dr. Scaramozzino***

4      Plaintiff complains that the ALJ did not give any legitimate reason to reject Dr.

5   Scaramozzino's opinion. (Doc. 22 at 13).  Dr. Scaramozzino performed a psychiatric evaluation of

6   Plaintiff in June 2008.  AR 291-96.  After examination,  Dr. Scaramozzino opined that Plaintiff

7   could understand and remember very short and simple instructions; could sustain an ordinary routine

8   without special supervision; and was capable of managing her own funds.  AR 295-96.  He found

9   that Plaintiff was "moderately impaired" in understanding and remembering detailed instructions;

10  maintaining concentration and attention; accepting instructions from a supervisor and responding

11  appropriately; completing a normal workday/workweek without interruptions at a constant pace;

12  interacting with coworkers; dealing with changes in the work setting; and social functioning.  AR

13  295-96.

14      At the outset, the Court notes that the ALJ—despite her statement that she provided "little,

15  if any" weight to the opinion of examining psychologist Dr. Scaramozzino—adopts a mental RFC

16  that is remarkably similarly to the findings by Dr. Scaramozzino.  AR 24.  The ALJ found that

17  Plaintiff could do a restricted range of simple, repetitive unskilled work in a socially less demanding

18  setting, but had "moderate limitations" in understanding, remembering, and carrying out detailed

19  instructions; maintaining attention and concentration for extended periods; completing a normal

20  workday/workweek without interruptions and/or performing at a consistent pace; interacting

21  appropriately with the general public, accepting instructions and responding appropriately to

22  criticism from supervisors, and getting along with co-workers or peers; and responding appropriately

23  to changes in a work setting. AR 14.  The only limitation included in Dr. Scaramozzino's medical

24  opinion that is excluded from the ALJ's RFC assessment is: "the likelihood of the claimant

25  emotionally deteriorating in the work environment is fair to high."  AR 295.  Thus, the ALJ's

26  deviation from Dr. Scaramozzino's medical opinion is insubstantial.  An ALJ need not believe

27  everything a physician sets forth, and may accept all, some, or none of the physician's opinions.

28  *Magallanes v. Bowen*, 88 1 F.2d at 753-754.  To the minimal extent the ALJ's RFC finding diverged

from Dr. Scaramozzino's assessment, as discussed below, the ALJ provided adequate reasons for doing so.

The ALJ explained that she attributed less weight to Dr. Scaramozzino's opinion for several reasons. First, the ALJ noted that Dr. Scaramozzino had only examined Plaintiff one time. AR 16. Second, the ALJ observed that Dr. Scaramozzino did not review medical records from other sources. AR 16. Finally, the ALJ considered that the opinion emanated from the time prior to Plaintiff's changed medication regimen. AR 16.

As with the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). An ALJ may properly disregard a physician's opinion where, among other reasons, the opinion is based primarily upon the medical history and the subjective complaints of a claimant. *See, e.g., Matney*, 981 F.2d at 1020 (ALJ provided specific, legitimate reasons for disregarding physician's conclusions where physician examined claimant one time, produced a brief report and based a diagnosis on claimant's medical history and subjective complaints).

In the instant case, the ALJ gave legitimate and specific reasons to discount Dr. Scaramozzino's opinion. First, in a Social Security disability benefits proceeding, the one-time nature of an assessment is a valid reason to afford less weight than is afforded medical evidence found elsewhere in the record. *Fuggins v. Comm'r SSA*, 2009 U.S. Dist. LEXIS 681 8 (W.D. La. Jan. 30, 2009). Here, the ALJ credited those opinions that were most consistent with the record as a whole. Second, ALJ Rogers considered the fact that medical records indicate that Plaintiff's symptoms improved with prescription medications. In the ALJ's opinion, ALJ Rogers explained that medical records reflected that Plaintiff's symptoms were responsive to treatment when she was compliant with taking medications as prescribed. AR 12. This determination was not considered by Dr. Scaramozzino. *See generally Warre v. Comm'r Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medications are not disabling for the purpose of determining eligibility for SSI benefits"); 20 C.F.R. §§ 404.1530, 416.930 (non-compliance with prescribed treatment precludes award of benefits). Accordingly, the Court finds that there was no

1  error in the ALJ affording little weight to the opinion of Dr. Scaramozzino to the minimal extent that

2  it is inconsistent with the ALJ's RFC.

3      ***Dr. Lampe***

4      Plaintiff further argues that the ALJ erred by not discussing the opinion of Dr. Lampe.

5  Consultative medical examiner, Dr. Lampe evaluated Plaintiff in December 2007. AR 234-36.

6  After examination, Dr. Lampe found that Plaintiff suffers from Bipolar Disorder, NOS, and had a

7  GAF score of 45. Dr. Lampe also observed that there were "severe inconsistencies" in Plaintiff's

8  description of her symptoms. AR 235. He also noted that she was following a "very unorthodox

9  regimen which in fact has a great potential to worsen her cycling." AR 236.

10     Plaintiff's assertion that the ALJ did not consider Dr. Lampe's opinion is incorrect. The ALJ

11  did not ignore Dr. Lampe's opinion. The ALJ cited to and quoted from Dr. Lampe's report. *See* AR

12  16, *citing* to Exhibit 3F (Dr. Lampe's report)). The ALJ also acknowledged Dr. Lampe's opinion

13  that Plaintiff's "medical regimen for bipolar disorder was 'very unorthodox.'" AR 16. While the

14  ALJ did not analyze the report in more detail, to extent this is error it is harmless. Dr. Lampe found,

15  in relevant part, that Plaintiff could understand, remember, and carry out simple instructions and

16  "probably" would have difficulty dealing with the public. AR 236. This is consistent with the ALJ's

17  finding that Plaintiff could perform simple, repetitive unskilled work in a socially less demanding

18  setting. AR 14. Dr. Lampe's opinion does not significantly contradict the other medical opinions

19  relied on by the ALJ and is consistent with the RFC assessment used by the ALJ. Accordingly, the

20  Court finds that the ALJ gave sufficient consideration to the opinion of Dr. Lampe and her RFC

21  assessment was supported by substantial evidence.

22     ***Dr. Hernandez***

23     Plaintiffs argument that the ALJ implicitly rejected Dr. Hernandez's opinion on Plaintiff's

24  carpal tunnel syndrome is equally unpersuasive. Plaintiff complains that while the ALJ purportedly

25  adopted Dr. Hernandez's opinion that Plaintiff should avoid repetitive fingering, the ALJ found that

26  Plaintiff can do handling and fingering frequently. According to Plaintiff, frequent fingering exceeds

27  or is akin to the lay definition of repetitive fingering and as such the ALJ actually rejected the

28  opinion of Dr. Hernandez without sufficient reason.

With regard to Dr. Hernandez, ALJ Rogers found:

> Based upon the results of the consultative internal medical examination, Dr. Hernandez assessed in June 2008, that the claimant would be able to lift/carry 10 pounds occasionally and frequently; stand walk 6 hours in an 8-hour workday; sit for about 6 hours in an 8-hour workday; that there would be no postural limitations/restrictions; and that claimant should avoid repetitive reaching, handling, grasping, and fingering with the left hand due to carpal tunnel syndrome. These limitations/restrictions are consistent with the physical residual functional capacity assessed by the State Agency medical consultant.

AR 17.

The ALJ found that Plaintiffs carpal tunnel syndrome was a severe limitation. As a result, ALJ Rogers found that Plaintiff should perform "no more than frequent handling and fingering with he left hand." AR 14. The ALJ also noted that Plaintiff underwent carpal tunnel surgery release in July 2008 with anticipated recovery but still gave Plaintiff the "benefit of the doubt" and found that she had some residual symptoms from carpal tunnel syndrome. AR 15. Dr. Hernandez opined that Plaintiff has "manipulative limitations of reaching, handling, feeling, grasping, fingering, especially in a repetitive manner with the left hand due to carpal tunnel syndrome." AR 290.

Plaintiff reads the ALJ's findings and the medical opinion of Dr. Hernandez as inconsistent. In arguing that the ALJ's opinion and the record are inconsistent, Plaintiff asks the Court to conflate the meanings of repetitive and frequent, which the Court will not do. Frequent activity, under the agency's regulations, is defined as doing an activity from 1/3 to 2/3 of the work day. SSR 83-10. The agency's regulations do not define "repetitive," but analysis of Ninth Circuit social security case law reveals that the definitions of frequent and repetitive in the social security context are distinct. The Ninth Circuit's opinion in *Gardner v. Astrue*, 257 Fed. Appx. 28, 30 (9th Cir. 2007), is illustrative of this point. In *Gardner*, the Ninth Circuit wrote:

> Although we do not base our holding on this point, we note that "repetitively" in this context appears to refer to a qualitative characteristic-*i.e.*, how one uses his hands, or what type of motion is required-whereas "constantly" and "frequently" seem to describe a quantitative characteristic-*i.e.*, how often one uses his hands in a certain manner. Under this reading, a job might require that an employee use his hands in a repetitive manner frequently, or it might require him to use his hands in a repetitive manner constantly. The VE's testimony suggests that someone who cannot use his hands constantly in a repetitive manner, but can use his hands frequently in a repetitive manner, could perform the jobs of electronics worker and marker. The ALJ's RFC finding, however, suggested that Gardner should not use his hands in a repetitive manner at all, whether constantly or frequently.

*Gardner*, 257 Fed. Appx. at 30, n. 5.

1    Like the scenarios presented in *Gardner*, here it is possible that Plaintiff could be required

2  to use her left hand frequently but in a manner that is not repetitive. Nevertheless, the Court cannot

3  say that the ALJ's finding that Plaintiff should perform "no more than frequent handling and

4  fingering with the left hand" is inconsistent with Dr. Hernandez's opinion that Plaintiff should

5  "avoid repetitive handling and fingering with the left hand." Although Plaintiff argues that the lay

6  definition of repetitive exceeds the agency's definition of frequent, that does not indicate that the

7  ALJ's opinion was in error. It simply shows that there is more than one reasonable interpretation of

8  the evidence. "Where the evidence is susceptible to more than one rational interpretation, one of

9  which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart,* 278

10  F.3d 947, 954 (9th Cir. 2002). The ALJ relied on Dr. Hernandez's opinion, stating that it was

11  supported by the medical record. Because the ALJ's finding that Plaintiff could perform frequent

12  handling and fingering was reasonable and supported by substantial evidence, this Court may not

13  second-guess the ALJ's findings. *See Rollins v. Massanari*, 261 F.3d 853,857 (9th Cir. 2001).

14  Accordingly, the ALJ did not improperly reject Dr. Hernandez's opinion.

15       ***3.    Credibility Findings***

16    Next, Plaintiff complains the ALJ failed to properly assess her credibility. (Doc. 22 at 19).

17  Specifically, Plaintiff argues that because her daily activities do not exceed her claimed limitations

18  the ALJ erred by rejecting her testimony. The Commissioner asserts that the ALJ provided sound

19  reasons to discredit Plaintiff's subjective complaints. (Doc. 31 at 16).

20    If the ALJ has set forth specific and cogent reasons for disbelieving Plaintiff's testimony,

21  *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981), that assessment should typically be given

22  great weight, *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985).

23    Specifically here, ALJ Rogers made the following findings:

24    Evaluation of the claimant's mental status is more difficult based upon reference to
      a positive drug test within a couple months prior to the date of the claimants only

25    documented hospitalization for severe depression; the gap in both mental and
      physical treatment from August 2004 to August 2007; the numerous inconsistencies

26    within the file in terms of the claimants mental health history and activities of daily
      living; and references to claimant's medical regimen for bipolar disorder being "very

27    unorthodox" and in some ways even contradicted.

28  AR 16, internal citations omitted.

20

The Court disagrees with Plaintiff's argument. The ALJ provided specific reasons for discrediting Plaintiff's testimony. First, ALJ Rogers noted Plaintiff's four-year lapse in treatment, a legitimate consideration. *See Fair v. Bowen*, 885 F.2d at 603-04 (claiming severe conditions yet receiving minimal, conservative, or no treatment is a basis to reject claimant's testimony). Second, the ALJ noted that Plaintiff tested positive for drugs within a couple of months prior to her only documented hospitalization for depression. AR 16. A lack of candor regarding drug use may be considered in the credibility analysis. *See Thomas*, 278 F.3d at 959 (lack of candor about drug and alcohol use may discredit testimony, where claimant "had not been a reliable historian, presenting conflicting information about her drug and alcohol usage"). Finally, the ALJ also discussed the fact that Dr. Picknell found Plaintiff to be unreliable. AR 16. In his report, Dr. Picknell said Plaintiff was "difficult to evaluate," as she was a poor historian and gave conflicting information. AR 314. This, too, was proper: an ALJ may use ordinary techniques of credibility evaluation, such as statements by the claimant that appear less than candid. *See Smolen*, 80 F.3d at 1284. Here, the ALJ set forth multiple legally sufficient reasons for discrediting Plaintiff's statements. Thus, the ALJ's credibility assessment should be affirmed.

### 4. *Lay Witness Testimony*

Finally, Plaintiff claims that the ALJ committed errors by failing to address or mention the the lay witness testimony by her mother. On July 9, 2007, Plaintiff's mother, Jeanette Lackey, completed a "Function Report-Adult-Third Party" describing Plaintiff's activities and other functions. AR 151-158. Mrs. Lackey wrote that she has known Plaintiff her entire life and that she is with Plaintiff the majority of the day, every day. Mrs. Lackey also wrote, among other things, that Plaintiff does chores on a good day, has trouble sleeping, does not like being around a lot of other people and that she has panic attacks. AR 151-158. The ALJ did not address this form in her decision and Plaintiff contends that this was error.

In determining whether a claimant is disabled, an ALJ must take into account lay witness testimony concerning a claimant's ability to work unless the ALJ expressly determines not to and gives reasons germane to each witness for doing so. *Stout v. Commissioner, Social Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). "[W]here the

1   ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant,

2   a reviewing court cannot consider the error harmless unless it can confidently conclude that no

3   reasonable ALJ, when fully crediting the testimony, could have reached a different disability

4   determination." *Stout*, 454 F.3d at 1056; *see also Robbins v. Social Sec. Admin.*, 466 F.3d 880, 885

5   (9th Cir. 2006).

6          Here, the ALJ's failure to fully address Jeanette Lackey's testimony was harmless error. Mrs.

7   Lackey's testimony was substantially similar to that of Plaintiff's.  As addressed above,  the ALJ

8   rejected Plaintiff's testimony with clear and convincing reasons.  Accordingly, Mrs. Lackey's

9   testimony did not add substantial weight to Plaintiff's claim. *Cf. Robbins*, 466 F.3d at 885 (finding

10  reversible error in failure to consider testimony of claimant's son, noting that "[b]ecause the ALJ did

11  not make a legally sufficient adverse credibility finding with regard to [the claimant's] own

12  testimony, we cannot say with respect to [the son's] testimony that no reasonable ALJ, when fully

13  crediting the testimony, could have reached a different disability determination").  Under these

14  circumstances, the failure to address fully this evidence was inconsequential to the ultimate

15  determination of non-disability. *Stout*, 454 F.3d at 1055.  Accordingly, this issue does not merit

16  reversal.

17                                      **RECOMMENDATION**

18         Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial

19  evidence in the record as a whole and is based on proper legal standards.  Accordingly, the Court

20  RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of

21  Social Security be DENIED and that JUDGMENT be entered for Defendant Michael J. Astrue and

22  against Plaintiff Trina Everett.

23  /////

24  /////

25  /////

26  /////

27  /////

28  /////

These findings and recommendations will be submitted to the Honorable Lawrence J. O'Neill pursuant to the provisions of Title 28 of the United States Code section 636(b)(l).  Within fifteen (15) days after being served with these findings and recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **May 30, 2012**          _____**/s/ Barbara A. McAuliffe**_____
                                          UNITED STATES MAGISTRATE JUDGE